UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Ashland)

| | | |
|---|---|---|
| TIMOTHY STEVEN BLACKBURN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 0: 17-120-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Acting Commissioner of Social Security Nancy A. Berryhill's ("the Commissioner") motion for summary judgment. [Record No. 18] Plaintiff Timothy Blackburn ("Blackburn" or "the Claimant") did not file a motion for summary judgment and did not respond the to the Commissioner's motion.[1] Although the Court could grant the Commissioner's motion based solely on Blackburn's failure to respond, *see Humphrey v. U.S. Attorney General's Office*, No. 07-3740, 2008 WL 2080512, at \*3 (6th Cir. May 15, 2008), the Court has examined the merits of the motion, and finds that the Commissioner's decision is supported by substantial evidence. Accordingly, the Commissioner's motion for summary judgment will be granted on the merits.

---

[1] On August 7, 2018, Blackburn filed a motion to amend his Complaint to add a claim that the Administrative Law Judge ("ALJ") who adjudicated his claim was improperly appointed, pursuant to *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018). The motion was denied this date.

# I.     Procedural History

Blackburn filed concurrent applications for a period of disability and DIB under Title II of the Social Security Act ("the Act") and SSI under Title XVI of the Act in July 2014. [*See* Administrative Transcript, "Tr.," 233-241.] He alleged that he became unable to work on April 15, 2004, due to post-traumatic stress disorder, manic depression, anxiety, bipolar disorder, back pain, and knee pain. [Tr. 254] His claims were denied initially and upon reconsideration and, eventually, by ALJ Maria Hodges following an administrative hearing. [Tr. 119, 127, 7-20] Blackburn sought review by the Appeals Council, which was denied. [Tr. 1-3]

Having exhausted his administrative remedies, Blackburn filed a Complaint in this Court in November 2017, alleging that the ALJ's decision was not supported by substantial evidence. [Record No. 1] The Commissioner filed a timely Answer and the Court entered General Order 13-7, which requires the plaintiff to move for summary judgment or judgment on the pleadings within 60 days. [Record No. 10] Blackburn failed to do so, but asked for an extension of time after the 60-day period had expired. [Record No. 11] The request for an extension of time was denied because Blackburn's attorney did not provide good reasons or excusable neglect for his failure to file a timely motion or ask for an extension within the period for doing so. [Record No. 12]

The Court directed the Commissioner to file a motion for summary judgment within 30 days and Blackburn was given 15 days to respond. [Record No. 17] The Commissioner filed her motion for summary judgment on July 26, 2018. [Record No. 18] Blackburn's deadline for filing a response has now passed.

## II.    Background

Blackburn was 33-years-old at the time of the ALJ's decision and lived with his wife and 11-year-old daughter. [Tr. 18-20, 56, 255] He had an eighth-grade education and had worked as a cook in fast food restaurants, a telemarketer, and an inspector for an automotive company. [Tr. 45-48] He had a driver's license but lost it around 2004 due to non-payment of child support. [Tr. 43]

Blackburn reported that he became unable to work due to back and neck pain and anxiety. [Tr. 49] He stated that he was receiving injections for his back, but the clinic was shut down. [Tr. 49-50] Blackburn also reported that his primary care provider, Melissa Frederick, prescribed medication that helped with the pain to some extent. [Tr. 52] However, he advised that he was unable to lift a gallon of milk, walk more than 50 to 100 feet, or sit for more than 20 to 30 minutes. [Tr. 53-55] Blackburn also reported using a cane that Frederick had prescribed after diagnosing him with two torn menisci. [Tr. 54]

Blackburn received mental health counseling at Pathways, Inc., in Ashland, Kentucky from May 2011 through February 2012 and briefly in 2014. [Tr. 362-91; 419-25] He was diagnosed with major depressive order, anxiety disorder, and posttraumatic stress disorder ("PTSD"). [Tr. 362] Counselors assisted Blackburn in developing coping strategies to deal with feelings of depression and enhance self-confidence. [Tr. 363-64] Although he had attempted suicide at the age of 17, there were no current suicidal thoughts or plans, and no current thoughts of violence toward others. [Tr. 368] Norman Rubin, APRN, evaluated Blackburn and prescribed medications for mood disorder and anxiety during his initial visit in May 2011. [Tr. 375-76]

Blackburn's primary care provider was Melissa Frederick, APRN, who began treating him in 2014. Frederick diagnosed Blackburn with low back pain, neck, and knee pain and prescribed anti-inflammatories and pain medication including ibuprofen, tramadol, baclofen, Norco, and Fioricet. [Tr. 403-07]

Frederick ordered several diagnostic studies regarding Blackburn's neck, back, and knee in the summer of 2014. An MRI of the lumbar spine revealed mild degenerative joint disease ("DJD") and "small disc herniations" at L4-L5 and L5-S1. [Tr. 431] X-rays of the left knee and thoracic spine were normal. [Tr. 432, 439] An MRI of the thoracic spine revealed DJD and small disc herniations at T7-T8 and T8-T9. [Tr. 436] An MRI of the left knee revealed mild DJD and "very small medial and lateral meniscal tears." [Tr. 438] An MRI of the cervical spine revealed mild DJD and small herniations at C3-C4, C4-C5, and C5-C6. [Tr. 434]

Frederick referred Blackburn to James Bean. M.D., a neurosurgeon, in October 2014. [Tr. 401-02] Bean noted that changes seen on cervical and lumbar MRIs were mild and reported that surgical intervention was not necessary. *Id.* He also indicated that Blackburn had no gait disturbance, weakness, tremor, or sensory loss. [Tr. 402]

Frederick completed a medical source statement in September 2016. [Tr. 426-30] She reported that Blackburn could sit for only two hours and would need six hours of bedrest during an eight-hour workday. She also assigned Blackburn significant environmental limitations and reported that use of his arms and legs caused numbness and pain. [Tr. 427-28] She cited the MRI results in support of her conclusions and remarked that Blackburn had presented to her office with neck pain and muscle spasms. [Tr. 429]

Naushad Haziq, M.D., examined Blackburn in February 2011. [Tr. 343-47] Blackburn advised Haziq that he had been hit by a car three times within the previous ten years and that he was in a motor vehicle accident a few months before the examination. [Tr. 343] Haziq's examination of Blackburn's cervical spine produced normal results, with no range of motion limitations noted. [Tr. 345] Likewise, Haziq detected no range of motion limitations in Blackburn's extremities or trunk. [Tr. 346] His strength was rated as 5/5 and he was able to walk on his heels and toes, perform tandem gait, and could squat without difficulty. *Id.*

Robert Genther, Ph.D., performed a psychological evaluation in March 2011. [Tr. 351-59] Blackburn advised Genther that he had been depressed for many years and had received treatment as a teenager. [Tr. 353] He reported that his greatest barrier to employment was that he could not tolerate "being around people." [Tr. 355] Genther noted that Blackburn did not appear depressed or anxious during the exam and his thought processes were logical and goal directed. [Tr. 352] His memory for facts and dates was adequate, although he had limited judgment and limited insight into the nature of his problems. *Id.*

Genther administered the Wechsler Adult Intelligence Scale IV ("WAIS-IV") and determined that Blackburn's IQ fell within the average to low-average range of intelligence. [Tr. 356] Blackburn took the Wide Range Achievement Test-4 ("WRAT-4"), as well. Genther concluded that Blackburn performed at the following grade equivalents: word reading, 12.5; sentence comprehension, 11.3; spelling, 10.8; and math computation, 10.1. *Id.*

Genther concluded that Blackburn's capacity to retain and follow simple instructions and to carry out and persist at simple repetitive tasks was adequate. [Tr. 358] He also reported that Blackburn's attention/concentration skills and capacity to make simple work-related decisions were adequate. *Id.* However, his ability to deal with the public was mildly limited. Further, Genther believed that Blackburn's capacity to relate to employers and coworkers was below average and his ability to work with others without being distracted or overwhelmed was below average. *Id.*

Thien Ngo, M.D. examined Blackburn in June 2013. [Tr. 392-95] Blackburn rated his pain as six on a scale of ten and described it as sharp/needle-like and intermittent. [Tr. 392] His gait was normal and he was able to bend and squat without difficulty, although he had his lumbar range of motion was slightly limited. [Tr. 393, 395] Ngo concluded that Blackburn would be able to sit, walk, and/or stand for a full workday with frequent and adequate breaks, lift/carry objects with limitations secondary to pain, hold a conversation, respond appropriately to questions, carry out and remember instructions. [Tr. 394]

Geraldo Lima, Ph.D., performed a psychological examination in June 2013 [Tr. 397-400] and again in December 2014. [Tr. 411-14] Lima noted that Blackburn's affect was constricted and his mood anxious, but his speech was coherent and his thought processes were logical. [Tr. 397, 411] His recent and remote memory seemed intact and his overall fund of information seemed fair. *Id.* He possessed a good capacity for abstract reasoning and a fair capacity to calculate and concentrate. [Tr. 398, 412] Additionally, his social judgment was intact. *Id.*

Lima concluded that Blackburn could understand simple instructions and had no difficulty recalling that information. [Tr. 399, 413] He was able to concentrate well and was likely to be able to complete tasks in a normal amount of time. *Id.* In 2013, Lima thought that Blackwell was likely to do well in social contexts, but by December 2014, reported "[h]e is socially withdrawn and not likely to do well in social contexts." *Id.* Lima also reported that his ability to cope with pressures and stressors such as those found in typical work settings was reduced. *Id.*

Dennis Campbell, M.D., a psychiatrist at Pathways, provided a check-box medical source statement in February 2016. [Tr. 415-18] Campbell reported that Blackburn had a fair ability to follow work rules, but a poor ability to relate to co-workers and deal with the public. [Tr. 415] He also stated that Blackburn had poor to no ability to deal with work stresses, maintain attention/concentration, behave in an emotionally stable manner, relate predictably in social situations, or to demonstrate reliability. [Tr. 416] Campbell did not provide any comments or describe any medical or clinical findings to support his assessment.

The ALJ concluded that Blackburn had the following severe impairments: pain disorder; degenerative joint disease; headaches; post-traumatic stress disorder (PTSD); and alcohol dependence, in reported remission. [Tr. 13] Considering all of the evidence, the ALJ determined that Blackburn had the residual function capacity ("RFC") to perform a limited range medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c) except

> He can frequently climb ramps and stairs, ladders, ropes and scaffolds; frequently stoop; he should avoid even occasional vibration and concentrated

exposure to hazards; he can perform simple, routine work, with routine defined as repetitive work done in a relatively unchanged environment.

[Tr. 17]  The ALJ further found that, although Blackburn could not perform any of his past work, there were jobs that existed in significant numbers in the national economy that he could perform.  [Tr. 18]  Accordingly, the ALJ concluded that he had not been under a disability from April 15, 2004, through the date of the ALJ's decision.  [Tr. 20]

### III.    Standard of Review

Under the Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)).  A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)).  If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that he is not engaged in substantial gainful employment at the time of the disability application.  20 C.F.R. §§ 404.1520(b), 416.920(b).  Second, the claimant must show that he suffers from a severe impairment or a combination of impairments.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed

impairment, he will be considered disabled without regard to age, education, and work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if the claimant has a severe impairment but the Commissioner cannot make a determination of the disability based on medical evaluations and current work activity, the Commissioner will review the claimant's RFC and relevant past work to determine whether he can perform his past work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If he can, he is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f).

Under the fifth step of the analysis, if the claimant's impairments prevent him from doing past work, the Commissioner will consider her RFC, age, education, and past work experience to determine whether he can perform other work. If he cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g). "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work available in the economy that the claimant can perform.'" *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

This Court's review is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the ALJ employed the proper legal standards in reaching her decision. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is such relevant evidence as reasonable minds might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

## IV.    Discussion

### Substantial Evidence Supports the ALJ's Decision

Blackburn's date last insured was June 30, 2004.  [Tr. 10, 77]  As a result, he was required to establish that he was disabled prior to that date to be entitled to DIB.  *See King v. Sec'y of Health & Human Servs.*, 896 F.2d 204, 205-06 (6th Cir. 1990). Consistent with the ALJ's opinion, Blackburn failed to produce any evidence that he was disabled on or before that date.  State agency consultant Dan Vandivier, Ph.D., reviewed Blackburn's record in August 2014 and concluded that there was "little to no useful evidence regarding the pre-[date last insured] period."  [Tr. 78]  Blackburn testified that he was "not doing too well" in the summer of 2004 and had "some physical problems," but was "against getting help at the time."  [Tr. 68]

The ALJ's decision is also supported by substantial evidence when it comes to Blackburn's application for SSI.  Jack Reed, M.D., reviewed Blackburn's file in January 2015 and reported that he would give great weight to the opinions of Drs. Lima and Ngo.  [Tr. 111]  Reed believed that Blackburn's claims of pain and limitations were partially credible and that he could lift and/or carry 50 pounds occasionally and 25 pounds frequently.  [Tr. 111-12]  He reported that Blackburn could stand and/or walk for six hours in an eight-hour workday and that he could sit for a total of six hours.  [Tr. 112]  He also believed Blackburn could frequently climb stairs, ramps, ladders, ropes, and scaffolds, and could frequently bend at the waist.  [Tr. 113]  He opined that Blackburn's ability to balance, knee, crouch, and crawl was unlimited, but he should avoid even moderate exposure to vibration.  *Id.*

Christi Bruening, Ph.D., also reviewed the file in January 2015 and indicated that Blackburn had mild limitations in the following categories: restriction of activities of daily living; difficulties in maintaining social functioning; and difficulties in maintaining concentration, persistence, or pace. [Tr. 110] Bruening disagreed with Lima's conclusion about Blackburn's ability to function socially. She remarked that Blackburn responded cooperatively during the consultative examination process, denied having interpersonal difficulties at other jobs, continued having social contacts, and interacted with others in public settings as needed. *Id.* The record supports Bruening's assessment. While Blackburn and his wife reported that his social functioning had declined, both reported that he talked on the telephone to friends regularly. [Tr. 265] And while Blackburn claimed that he could not stand to be around other people, he went shopping once or twice per week. [Tr. 264] Any significant limitations regarding social functioning appear to be based solely on Blackburn's unsubstantiated reports.

Based on the foregoing, it is hereby

**ORDERED** that the Commissioner's motion for summary judgment [Record No. 18] is **GRANTED**.

Dated: October 18, 2018.

Signed By: 

*Danny C. Reeves*

**United States District Judge**